This is an appeal from a judgment of the Monmouth County Court reversing an award by the Workmen's Compensation Bureau in favor of the petitioner-appellant.
On April 22, 1947, petitioner was in the defendant's employ at its department store in Asbury Park. Shortly prior thereto, the defendant's personnel director, after a meeting with representatives of other employers in the area, had proposed to its store manager that a vaccination service be made available to its employees to guard against a smallpox epidemic which had been threatened by several cases in New York City. The proposal was adopted, vaccine was purchased through the local Department of Health and a notice was distributed to the defendant's employees stating that, "On April 22, 1947, we will provide free innoculation to all those who choose to be immunized against smallpox. We are sure that everyone is aware of the current spread of smallpox and we strongly urge that you take advantage of this service, which we are glad to provide in the interest of your health."
Pursuant to this notice most of the employees, including the petitioner, were vaccinated and it is stipulated that the petitioner suffered a reaction which resulted in both temporary *Page 261 
and partial permanent disability. Petitioner's claim under the Workmen's Compensation Act was sustained in the Bureau which made the factual determination that she had "suffered an injury as a result of an accident which arose out of and in the course of her employment". The Bureau's award was reversed on October 15, 1948, by the Monmouth County Court and the petitioner appeals therefrom.
The defendant's personnel director testified that it was his responsibility to improve the employer-employee relationship, to promote morale and to create a happier environment for the employees. He acknowledged that although his activities pointed to additional employee privileges they were designed for and resulted in mutual benefits to employer and employee. Thus, the defendant has made available at its premises a cafeteria where food is served to employees at reduced prices and a medical clinic where they may receive treatment for incidental non-industrial ailments as well as industrial accidents. The personnel director further acknowledged that absenteeism disrupts orderly business and that it was in the employer's interest that measures be taken to reduce absences but stated that the vaccination program resulted in an expected rise in absenteeism, presumably of short duration. He stressed that the vaccination was not compulsory and pointed out that to emphasize its voluntary nature the employees were required to certify that the defendant would not be responsible for the results.
The issue as to whether a disability is compensable where it has resulted from an employee's vaccination on his employer's direction, has been passed upon in several cases. Thus, inSanders v. Children's Aid Society, 238 App. Div. 746,265 N.Y.S. 698, (1933), aff'd 262 N.Y. 655, 188 N.E. 107
(1933) all of the employees were given a diphtheria antitoxin and the claimant suffered a reaction which caused permanent disability. The court sustained an award in the claimant's favor finding that the unforeseen injury was the result of a compensable accident within its State Act. Similar holdings are found in Alewine v. Tobin Quarries, 206 So. Car. 103,33 S.E.2d 81 (1945); Spicer Manufacturing Co. v. Tucker,127 Ohio St. 421 *Page 262 188 N.E. 870 (1934); Neudeck v. Ford Motor Company,249 Mich. 690, 229 N.W. 438 (1930); and Texas Employers'Insurance Association v. Mitchell, 27 S.W.2d 600 (TexasCiv. App. 1930).
The more troublesome issue which arises where, as here, the employer has urged but not directed the vaccination, has likewise been dealt with by the courts. In Freedman v. SpicerManufacturing Corp., 97 N.J.L. 325 (E. A. 1921) the employer, during the influenza epidemic of 1918, furnished a vaccine service at its plant to its employees and their families. The innoculations were voluntary but almost 900 of its 1200 employees submitted. Shortly following his innoculation the decedent employee fainted, fell and sustained a fractured skull from which he died. The Bureau denied compensation upon the finding that "it cannot be said that the said accident arose out of the employment, inasmuch as the acceptance of the innoculation was in no way compulsory or ordered by the company." The Court of Common Pleas' reversal of the Bureau's action was sustained first by the Supreme Court and then by the Court of Errors and Appeals. A similar result was reached in Smith v. Brown Paper Mill Co.,
152 So. 700 (La. 1934) where an employee's innoculation at the employer's plant against typhus resulted in permanent disability. The court, after stating that it was shown that the workmen were not "ordered or required" to take the innoculation, pointed out that, "the convenience of the facility and the posted notice constituted a suggestion, invitation and urge, calculated to induce an employee to submit to the treatment who might not otherwise have done so", and further that it could find no difference between the action of the employee in availing himself of the innoculation facility "and that of one using any other convenience furnished at the plant for the workmen." Cf. Taylorv. 110 South Pennsylvania Avenue Corp., 117 N.J.L. 346(Sup.Ct. 1936) and Flanagan v. Charles E. Green Son,121 N.J.L. 327 (Sup.Ct. 1938) aff'd 122 N.J.L. 424 (E. A. 1939).
On the other hand, the Supreme Court of Connecticut, with Chief Justice Wheeler dissenting, in Smith v. Seamless Rubber *Page 263 Company, 111 Conn. 365, 150 Atl. 110 (1930), sustained the denial of a disability award where the employee had voluntarily availed himself of a vaccination service afforded by the employer to combat a threat of smallpox. The court approved the doctrine that if the vaccination was for the benefit of the employer or for the mutual benefit of the employer and employee, then the resulting injury would be compensable but that if it was for the exclusive benefit of the employee then it would not be compensable. Cf. Stevens v. Essex Fells Country Club,136 N.J.L. 656 (Sup.Ct. 1948). The Compensation Commissioner had made no finding of fact that the employer was seeking to serve its own purposes and the court declined to assume as a matter of law that the vaccination was for the benefit of the employer or for the mutual benefit of both parties. In his dissenting opinion, Chief Justice Wheeler refused to accept the view that the vaccination was for the exclusive benefit of the employee, saying:
"I have no disposition to minimize the welfare of the defendant's employees, or that of the public, as important among the motives which impelled the defendant to this course; but it is equally apparent that these were not the only beneficiaries of the defendant's action. No doubt it was conscious, as I am, of the benefit to the operation of its business if smallpox could be kept out of its plant. The true situation will not be portrayed unless we say — its course was for the mutual convenience, that is the mutual advantage or service of both employer and employee. This is the necessary and inescapable legal inference from the facts found."
In the case before us the Bureau found that the vaccination service furnished at the employer's premises was a mutually beneficial facility comparable to its medical clinic, cafeteria and other employee facilities incidental to the employment and that insofar as it aided in the prevention of smallpox within the employee group it protected the employer against possibly disastrous business consequences. The personnel director's testimony lends support for this finding. His explicit responsibility was to aid his employer's business by improving its relationship with its employees. When the smallpox threat arose he met with personnel directors of other establishments and then recommended that the vaccination facility be set up *Page 264 
at his employer's place of business. The employees, although not compelled, were strongly urged to submit to the vaccination and, in natural response, most of them did. While his efforts were highly commendable, they were in the course of his stated duties and it would be unrealistic to find that they were for the exclusive benefit of the employees and were not additionally designed to further a sound employer-employee relationship and safeguard the employer against the serious effects of a case of smallpox amongst its employees. We have concluded that the activity was mutually beneficial, that the risk was reasonably incident to the employment and that the petitioner's injury resulted from an untoward event or accident arising out of and in the course of her employment within the broad and remedial intendment of the Workmen's Compensation Act. The decision by the Court of Errors and Appeals in the Freedman case, although not accompanied by a formal opinion, must be taken to have this effect and is controlling.
Although mention has been made of the fact that the employees certified that the employer would not be responsible for the results of the vaccination the respondent does not urge that this can legally serve to remove or narrow the employer's liability under the Act. See Micieli v. Erie Railroad Co., 131 N.J.L. 427 (E. A. 1944).
The judgment of the Monmouth County Court is reversed. *Page 265