MISS MARIE KING, EMPLOYEE, v. J. N. ARTHUR, JR., T/A ARCADIA
DAIRIES, EMPLOYER, AND LONDON GUARANTEE AND ACCIDENT
COMPANY, LTD., CARRIER.

(Filed 6 March, 1957.)

**Master and Servant § 40c—**

An injury sustained by an employee as a result of a medical blood test
required by statute (G.S. 130-20) in the interest of public health because
of the nature of the work, does not arise out of her employment within the
meaning of G.S. 97-2(f).

APPEAL by defendants from *Clarkson, J.,* October Civil Term 1956,
of BUNCOMBE.

Proceeding under our Workmen's Compensation Act to determine
the liability of the defendants for compensation to plaintiff resulting
from an injury hereinafter described.

It is stipulated that the claimant and J. N. Arthur, Jr., trading as
Arcadia Dairies, were subject to the provisions of the Workmen's Com-
pensation Act at the time of claimant's injury, and that her average
weekly wage was $33.00.

The claimant had been employed by J. N. Arthur, Jr., trading as
Arcadia Dairies, for approximately five years prior to the date of her
injury. The claimant testified, "As to the materials with which I work
at the dairy, I bottle milk, . . . I have a man there to help me with
the cans . . . we use G.L.X. Soap Powder to clean the machinery and
utensils at the dairy; we have a caustic soda that we put in the bottle
washers; I did that work every day."

On 18 April 1955, the claimant was sent by her employer to a County
Clinic which was being held at Avery's Creek Methodist Church to
have a Wassermann test, which tests were being administered by a
County Health Nurse. The nurse attempted to extract blood from the
claimant's left arm but failed to do so; she then changed needles and
extracted the blood from claimant's right arm. The County Health
Nurse, Mrs. Esta Crawford, testified that the vein in claimant's left
arm had flattened, making the withdrawal of blood impossible. Imme-
diately following the Wassermann, the claimant experienced a swelling
and drain lesion at the point of the needle puncture in the left arm,
which injury has not yet healed.

It is also stipulated that employees of certain types of dairies, in-
cluding Arcadia, are required by the rules and regulations of the
Buncombe County Board of Health to submit to Wassermann tests
every six months, and that such employers must furnish evidence of
compliance with such requirements or be subject to "immediate degrad-
ing, suspension of permit, and/or court action."

The medical testimony is completely negative as to the cause of the injury which followed the insertion of the needle into the left arm of the claimant. The claimant had had a similar lesion in 1950 and the evidence does not disclose whether or not she was employed at that time by the defendant employer. The only medical testimony offered before the hearing Commissioner was that of an admitted medical expert specializing in dermatology. This witness, offered by the defendants, testified, "From the history given me by Miss King, and on my own observation and experience, it is my opinion that she had an itchyma. The cause can be due to an infection that is uncontrolled, caustic burn, or local medication. You ask me the possible causes. . . . I cannot say definitely it was an infection. I cannot say it was due to medication. I cannot say it was due to a caustic burn. . . . It could have been caused by an infection of some kind that got under the skin; or due to a caustic burn which later became infected; or to a local medication. I have no opinion satisfactory to myself as to which of these things caused the particular trouble."

The hearing Commissioner found as a fact that the "claimant sustained an injury by accident arising out of and in the course of her employment when the needle was inserted in her arm and an infection resulted." He likewise concluded as a matter of law that the claimant sustained an injury by accident arising out of and in the course of her employment, on 18 April 1955. An award was accordingly entered in favor of the claimant for temporary total disability during the period from 5 May 1955 to 2 July 1955 inclusive.

The defendants filed exceptions and appealed to the Full Commission. The Full Commission adopted the findings of fact and conclusions of law of the hearing Commissioner and affirmed the award. The defendants preserved their exceptions and appealed to the Superior Court where the exceptions were overruled and the award affirmed.

The defendants appeal, assigning error.

*Horton & Hyldburg for plaintiff.*
*Harkins, Van Winkle, Walton & Buck and O. E. Starnes, Jr., for defendants.*

DENNY, J. The defendant employer was under compulsion of law to see that the employees in his dairy took a Wassermann test each six months. If he failed to see that such tests were made and to furnish evidence thereof, upon request, to the Buncombe County Board of Health as required by its rules and regulations, his dairy would become subject to "immediate degrading, suspension of permit," and he would become guilty of a misdemeanor and upon conviction subject to a fine or imprisonment, as provided in G.S. 130-20.

Therefore, the question posed for determination is simply this: Does an injury sustained by an employee while taking a medical test or examination, which test or examination is required by law in order for the employee to continue to hold her job, constitute an accident arising out of and in the course of her employment within the meaning of G.S. 97-2(f)?

A majority of the cases bearing on this question seem to turn on (1) whether or not the vaccination or test was voluntary on the part of the employee, (2) whether or not the vaccination or test was made for the primary benefit of the employer and at his request, or (3) whether or not the vaccination or test was made under compulsion of law.

Where a board of health recommends but does not direct that the employees of an employer be vaccinated in an effort to prevent a threatened epidemic, and the employer makes available the facilities for the vaccination without cost to his employees, but leaves it purely optional with the individual employee as to whether or not he will be vaccinated, and the employee as a result of the vaccination contracts an infection, ordinarily such injury is not compensable. In such a situation the vaccination is recommended not for the benefit of the employer but primarily for the benefit and protection of the employee and the public generally. *Smith v. The Seamless Rubber Co.*, 111 Conn. 365, 150 A. 110, 69 A.L.R. 856.

However, in the case of *Saintsing v. Steinbach*, 1 N.J.S. 259, 64 A. 2d 99, the Court held that disability from a smallpox vaccination administered free to the employee, in the employer's medical clinic, who with other employees was strongly urged but not directed to be vaccinated to guard against a threatened epidemic, was compensable as a result of "accident," "arising out of and in the course of employment." The Court concurred in the finding of the Workmen's Compensation Bureau to the effect that "the vaccination service furnished at the employer's premises was a mutually beneficial facility comparable to its medical clinic, cafeteria and other employee facilities incidental to the employment and that insofar as it aided in the prevention of smallpox within the employee group it protected the employer against possibly disastrous business consequences." Affirmed 2 N.J. 304, 66 A. 2d 159.

Ordinarily, an infection resulting from a vaccination or blood test administered by the employer's physician or nurse, is held to be an injury "arising out of and in the course of the employment," where the employer required the employee to be vaccinated, even though the requirement may have been based on a request or recommendation of the board of health. *Spicer Mfg. Co. v. Tucker*, 127 Ohio St. 421, 188 N.E. 870; *Neudeck v. Ford Motor Co.*, 249 Mich. 690, 229 N.W. 438; *Smith v. Brown Paper Mill Co.*, La. App., 152 So. 700; *Texas Employers Insurance Assn. v. Mitchell* (Tex. Civ. App.), 27 S.W. 2d 600; *Sanders*

*v. Children's Aid Society,* 238 App. Div. 746, 265 N.Y.S. 698, affirmed 262 N.Y. 655, 188 N.E. 107; *Alewine v. Tobin Quarries,* 206 S.C. 103, 33 S.E. 2d 81; *Roberts v. U.S.O. Camp Shows,* 91 Cal. App. 2d 884, 205 P. 2d 1116; Larson on Workmen's Compensation Law, section 27.32, page 416.

On the other hand, the authorities seem to hold that where the employee is required by law to have a blood test in order to obtain employment or to retain it because of the nature of the work, if the employee becomes infected as a result of such test, the disablement resulting therefrom is not a compensable accident that "arose out of and in the course of the employment," notwithstanding that the employer pursuant to his statutory duty had ordered the employee to take the test. *Industrial Commission v. Messinger,* 116 Colo. 451, 181 P. 2d 816; *Krout v. J. L. Hudson Co.,* 200 Mich. 287, 166 N.W. 848, L.R.A. 1918F, 860; 58 Am. Jur., Workmen's Compensation, section 277, page 775; Larson on Workmen's Compensation, section 27.32, page 416, *et seq. Cf. Jefferson Printing Co. v. Industrial Commission,* 312 Ill. 575, 144 N.E. 356.

In the case of *Industrial Commission v. Messinger, supra,* the claimant was a waitress handling food in a local restaurant. When directed by her employer to secure a health certificate, she submitted herself to a physician who drew some blood from her arm for the purpose of making the blood test required by law. The Court said: ". . . it is apparent that the employer was obligated by the state law to have claimant obtain a health certificate. It was not his regulation or requirement, it was that of the State. Claimant was incapacitated by reason of her compliance therewith. Obviously, as the Commission found, her accident did not arise out of and in the course of her employment.

"We have not found, nor has any case been cited involving the question presented. Cases where employees have been injured as a result of vaccination or inoculation present similar legal problems. There are only a few of them and all which have been called to our attention have been considered. What they hold is, that the right to compensation is determined by the construction placed on the phrase, 'Arising out of and in the course of employment,' and its application to the facts in each particular case. Compensation was allowed in those cases where the vaccination or inoculation was performed for the benefit of the employer, and had been required by him. *Neudeck v. Ford Motor Co.,* 249 Mich. 690, 229 N.W. 438; *Spicer Mfg. Co. v. Tucker,* 127 Ohio St. 421, 188 N.E. 870; *Smith v. Brown Paper Mill Co.,* La. App., 152 So. 700.

"On the other hand, compensation was denied in those cases where it appeared that vaccination or inoculation was made necessary by

reason of public requirement. *Smith v. Seamless Rubber Co.*, 111 Conn. 365, 150 A. 110, 69 A.L.R. 856, and *Jefferson Printing Co. v. Industrial Commission*, 312 Ill. 575, 144 N.E. 356. The court rested its decision in these cases upon the ground that the proof disclosed affirmatively that the vaccination was not ordered or in anywise brought about by the employer, but by a public agency for the public interest; and further, that the infection was not in anywise due or attributable to the work or place of work, or to the character of business or service of the employer."

It is said in 58 Am. Jur., Workmen's Compensation, section 277, page 775, "Incapacity caused by illness from vaccination or inoculation may properly be found to have arisen out of the employment where such treatment is submitted to pursuant to the direction or for the benefit of the employer, but the rule is otherwise where the employee voluntarily avails himself of such treatment solely for his own benefit, or in the interest of the public health, even though the facilities therefor were provided by the employer. It has been held also that an employee is not entitled to compensation for injury caused by vaccination which has been required by the employer at the request of the health authorities," citing *Krout v. J. L. Hudson Co., supra*.

Likewise, in Larson on Workmen's Compensation, section 27.32, page 416, *et seq.*, the author said: ". . . if the compulsion comes from state law or public authority, the injury is not compensable, as when regulations of a state board of health require that waitresses undergo a blood test. This was held true even when claimant's employer directed her to obtain the appropriate health certificate, since he did it only because he was compelled by state law to do so. It was not his requirement; it was the State's. When claimant submitted to the test, she was not performing a service for the employer, but merely satisfying a condition precedent to qualifying for that kind of employment."

Our attention has not been called to any decision or textbook authority, and we have been unable to find any, which supports the view that where a statute requires a blood test, because of the nature of the work of the employee, that an injury resulting from such test is compensable as an accident "arising out of and in the course of the employment." Therefore, in our opinion, upon the facts disclosed by the record on this appeal, the ruling of the court below should be reversed, and it is so ordered.

Reversed.