17900

Udell LEE, Respondent, v. WENTWORTH MANUFACTURING
COMPANY and Aetna Casualty & Surety Company, Appellants
(125 S. E. (2d) 7)

*Messrs. Wright, Scott, Blackwell, & Powers,* of Florence,
*for Appellants,*

*Messrs. Nettles & Thomy,* of Lake City, *for Respondent,*

April 11, 1962.

Lewis, Justice.

This case arises under the South Carolina Workmen's Compensation Act. The appeal is by the employer and carrier from an order of the lower Court affirming an award by the Industrial Commission to the claimant. The sole question to be decided is whether or not there is any competent evidence to support the finding of fact by the Industrial Commission that the claimant sustained an injury by accident arising out of and in the course of her employment.

The claimant was employed by the Wentworth Manufacturing Company to sew buttons on dresses. She was a member of the Ladies' Garment Workers' Union which had a contract with the employer. On October 29, 1959, a mobile medical unit of the health and welfare department of the union visited the employer's plant for the purpose of administering tuberculin tests to the union members employed there, pursuant to the health and welfare clause of the contract between the union and the employer. The employer permitted this medical unit of the union to use its first aid room at the plant for these tests and allowed the employees to take them during working hours. There was testimony that, under the contract between the union and the employer, the employer contributed to the Health and Welfare Fund of the union. A doctor, who was an employee of the union and accompanied the mobile unit, administered the tuberculin tests by the Mantoux Method, which consisted of injecting by a needle a tuberculin solution between layers of the skin on the arm. Since the tests were given to the employees during working hours, all could not leave their work at the same time without completely stopping the work of the plant. The employer, therefore, directed the employees as to when each could go for the test and the claimant was so directed

when her time arrived. While there had been some previous contact with the employees through the union as to the availability of the tests, due to the fact that claimant had been absent from her work for several days, she had heard no explanation concerning the test and thought that she was required to take it as a condition of her employment. The testimony shows that she was in error in this belief. The taking of the test was not required by the employer.

The tuberculin test was administered to the claimant by the union doctor on October 29, 1959. After the test was given, claimant returned to her work and, shortly thereafter, her arm began to sting and turned red where the test had been administered. She noticed at that time that the blue dye from the cloth with which she was working had stained her affected arm. Her arm became infected where the test was given and, in efforts to treat the infection, claimant became allergic to some of the medication used and a rash (contact dermatitis) broke out on that and other parts of her body. She was unable to work from November 2, 1959 to April 11, 1960, but has no permanent disability or disfigurement resulting therefrom.

Under the foregoing facts the Industrial Commission held that the infection of claimant's arm, where. the tuberculin test was administered by the union doctor, constituted an injury by accident which arose out of and in the course of her employment and awarded compensation for the attendant disability.

It is settled that the infection of the tuberculin test wound constituted an injury by accident. *Alewine et al. v. Tobin Quarries, Inc. et al.,* 206 S. C. 103, 33 S. E. (2d) 81.

The real question made by the exceptions is, therefore, whether there is any competent evidence to sustain the finding of the Industrial Commission that claimant's disability, resulting from the administration of the tuberculin test by the union doctor under the foregoing circumstances, arose out of and in the course of her employment.

It was held in *Johnson v. Merchant's Fertilizer Co.,* 198 S. C. 373, 17 S. E. (2d) 695, 697, that "an injury arises 'in the course of employment,' within the meaning of the Workmen's Compensation Act, when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. An accident arises 'out of' the employment, when it arises because of it, as when the employment is a contributing proximate cause." To be entitled to compensation, an employee need not necessarily be engaged at the time of injury in the actual performance of his work; it is sufficient if he is upon the employer's premises, "occupying himself consistently with his contract of hire in some manner pertaining to or incidental to his employment." *McCoy v. Easley Cotton Mills,* 218 S. C. 350, 62 S. E. (2d) 772, 774.

Apparently the only case heretofore before this Court dealing with the subject of the liability of an employer under the Workmen's Compensation Act for disability of an employee resulting from the administration of vaccinations or inoculations is that of *Alewine v. Tobin Quarries, supra,* 206 S. C. 103, 33 S. E. (2d) 81. There the employee was required by the employer to submit to a smallpox vaccination before he entered upon his work. Infection resulted, causing the employee's death. The facts disclosed that the employer directed that the vaccination be taken and that it was to the benefit of the employer that such be done. Compensation was allowed, the court holding that the infection of the vaccination wound was an accidental injury which arose out of and in the course of employment.

The employer contends in this case, however, that the administration of the tuberculin test to the claimant was not an incident of her employment, because it was not required by it, nor for its benefit, but was a service offered by the union to its members and voluntarily accepted by them.

The general rule, deducible from the decisions dealing with the subject of the liability of the employer under Workmen's Compensation Acts for disability resulting from the administration to an employee of vaccinations or inoculations, is thus stated in 58 Am. Jur. 775, Section 277: "Incapacity caused by illness from vaccination or inoculation may properly be found to have arisen out of the employment where such treatment is submitted to pursuant to the direction or for the benefit of the employer, but the rule is otherwise where the employee voluntarily avails himself of such treatment solely for his own benefit, * * *." See: Annotation in 69 A. L. R. 863; Larson's Workmen's Compensation Law, Vol. 1, Section 27:32; Schneider on Workmen's Compensation, Vol. 7, Page 358, Section 1674.

We think the record sustains the conclusion that the tuberculin test administered to the claimant was done for the mutual benefit of the employer and employee and properly held to be incidental to her employment. Modern business has put into practice many procedures designed to protect the health of its employees. The great benefits to be derived by both labor and management from the improvement and preservation of the health of the employee is now generally recognized. The early detection and prevention of disease produces not only benefits to the individual employee, but to the employer as well by the prevention of the spread of disease to other employees. The record reasonably supports the inference that the employer recognized the foregoing and the mutual benefits to be derived from the health program pursued by the union among the employees, and that such program was the result of the cooperative effort of both. The tests in question were given pursuant to the terms of the contract between the employer and the union. The employer contributed to the fund out of which the cost of the tests was paid. It actively cooperated in the health program by making its facilities available for the giving of the tests, permitting them to be given in its first aid room during working hours, and at a time designated by its supervisor. Certainly,

we cannot say that the foregoing circumstances lend no evidentiary support to the conclusion that the health program for the employees was for the mutual benefit of the employer and employee.

Neither can we say that the circumstances in this case were not of persuasive influence upon the claimant in taking the tuberculin test. While the claimant was not ordered or required by the employer to take the tests, she testified that she thought the taking of the test was required. The absence of explanation to the claimant that the taking of the tests was voluntary, the administration of them in the first aid room of the plant, the direction by the employer as to the time when each employee would report for the test, along with all of the other circumstances, was calculated to induce an employee to submit to the taking of the tests who might not otherwise have done so. *Cf. Smith v. Brown Paper Mill Company,* La. App., 152 So. 700.

We think there is sufficient evidence to support the finding of the Industrial Commission that the infection of the tuberculin test wound was an accident which arose out of and in the course of claimant's employment.

Affirmed.

TAYLOR, C. J., MOSS and BUSSEY, JJ., and LEGGE, Acting J., concur.